Hornblower, C. J.
The questions in this case, are, did Thomas Butcher take any: and if any, what estate, under the will of his grandfather William Nutt, in the premises in question ?
Omitting such parts of the will, as have no influence on the point before us, it may be read as follows, viz:
“ I give unto my wife, the one half of the house I now live in, she taking her choice, likewise half the lot, half the garden and half the stables, during her natural life. Item, I give and bequeath unto my daughter Ann Butcher, one half part of the house and lot I now live in, her mother having the other part, during her natural life, then after her decease, to bequeath to her son Thomas Butcher, to him, his heirs and assigns forever ; then after her mother’s decease, Ann Butcher to have the whole of it, during her natural life. Item, I give and bequeath to my grand son William Butcher, (certain lands, describing them,) to him, his heirs and assigns forever; when he arrives to the age of twenty-one years. Item, It is my will, that if my wife should die before her daughter Ann Butcher, that then out of the estate which I have left to William Butcher, he shall pay to his mother *29 yearly, ten pounds during her natural life; and further it is my will, that if William or Thomas should die, or either of them, the remainder to enjoy the other’s property; and if both should die, and she have any more children, then they shall enjoy it; ai:d if not, then to be sold and equally divided among my surviving children.”
By a subsequent clause he gave to his wife in fee, all his lands in Nottingham, not otherwise disposed of.
The testator died, leaving his daughter Ann Butcher, and his grandsons William Butcher and Thomas Butcher in life. After the testator’s death, his daughter Ann Butcher had a daughter named Ann, who was born in the year 1808, and who with her husband William Nelson, are the lessors of the plaintiff in this cause. William Butcher and Thomas Butcher both died in the life-time of their mother Ann Butcher: the former in 1832 and the latter in 1836, both of them having attained their full age, leaving lawful issue, and also leaving their sister Ann Nelson, them surviving.
It is contended on the part of the plaintiff, that if Thomas Butcher took anything under this will, he took only that half of the premises, which was devised to his mother Ann Butcher; and that, as he and William Butcher both died in the life-time of their mother, the half so devised to her, wont to their sister Ann Nelson, one of the lessors of the plaintiff, by way of executory devise. On the part of the defendant, who claims by purchase at a sheriff’s sale, under a mortgage given by Thomas Butcher and his mother Ann Butcher; it is insisted, that Thomas Butcher took au estate in fee simple in the whole premises, liable to be defeated upon his dying under age and without issue: subject to a life estate in his grandmother Nutt, in one-half, and to a like estate, in his mother, Ann Butcher, in the other half: and in case she survived her mother, then subject to the life estate of his mother Ann Butcher, in the whole premises: and that Thomas Butcher having left issue, the estate had become absolute in him, in lee simple.
The devise to Thomas, if there is one, is contained in the following clause in the will: “ I give and bequeath unto my daughter Ann Butcher, one half part of the house and lot I now live in, her mother having the other pari during her natural life, then *30 after her decease, to bequeath to her son Thomas Butcher, to him, his heirs and assigns forever; then after her mother’s decease, Ann Butcher to have the whole of it during her natural life.” That the testator, intended by the words “to bequeath to” a direct devise to Thomas, is manifest; for in the very next clause, he provides, that “if William or Thomas should die, the remainder,” (manifestly meaning, the one surviving, or remaining;) is “to enjoy the other’s property:” and the testator then proceeds to say, what shall be done with the property, in case both of them should die. Now unless something was directly given or intended to be given to Thomas, by the clause first quoted, there was nothing for this second clause to operate upon, in case William survived Thomas. We must therefore understand the testator to mean by the words, “ to bequeath to Thomas,” to go to Thomas. ■
The question then recurs : what was to go to Thomas? The whole, or only one half the house and lot ? And if only half, then which half? The one given to the grandmother for life; or the one given to Thomas’s mother, Ann Butcher, for life?
It seems to me, that the clause, upon which these questions arise, must be read, in order to be intelligible, as if punctuated, and marked in parentheses, as follows: “I give unto my daughter, Ann Butcher, one half part of the house and lot I now live in, (her mother having the other part,) during her natural life : then after her decease, to bequeath to her son Thomas Butcher, his heirs and assigns forever: then after her mother’s decease, Ann Butcher to have the whole of it during her natural life.” The will, so read, clearly, amounts to this: “Having given one half of the house and lot I now live on, to my wife during her life, I give the other half to my daughter Ann Butcher, during her natural life: and after her: (that is Ann Butcher’s) decease, to her son Thomas Butcher, his heirs and assigns forever : but, (if Ann Butcher survives her mother) then after her mother’s decease, Ann Butcher, is to have the whole house and lot during her natural life.”
Upon this reading of the will, and I do not perceive how it can be otherwise read, the testator devised to his grandson Thomas, only that half of the house and lot, which he had previously devised to his daughter, Ann Butcher, for life. The probability is *31 that the testator intended to give him the whole of those premises, subject to the life estate of the grandmother in one half, and the life estate of Ann Butcher in the other half, and in case she survived her mother, then, subject to the life estate of Ann Butcher, in the whole premises; but whatever may have been the testator’s secret intentions, he has not manifested them by any thing apparent on the face of his will. We might indeed, by transposing the different branches of the clause under consideration, make it read, so as to be a devise of the whole to Thomas ; but we are not at liberty to make such transposition, unless it is necessary, to carry out the manifest intention of the testator ; or to render the clause intelligible. But such intention, is not manifest, and the will is intelligible as it now stands. I cannot perceive therefore, how it is possible under this will, for the court to say, that the whole house and lot was devised to Thomas. It seems to me very.plain, that the testator only gave him that half in which his mother Ann Butcher, was to have a life estate.
The next question is, what estate did Thomas Butcher take in the half of the premises devised to his mother for life? In the clause containing the devise, it is given expressly to him, his heirs and assigns forever; but in the next clause there is a limitation, by which if ho dies, the property shall go to his brother William ; and if both die, then to any after born child or children of their mother Ann Butcher. Now it so happens that after the testator made his will, Ann Butcher had another child, namely, Ann, who is the wife of Nelson the lessor of the plaintiff; and that William and Thomas are both dead; and because they are dead, though each of them left issue, it is contended that the estate now belongs to Ann Nelson. Such indeed would be the case, if we were at liberty to follow the literal terms of the will. But most manifestly that was not the intention of the testator; for he had in express terms given William and Thomas, a fee in the property devised to them respectively; and he evidently intended to limit that estate upon some event that was to be contingent. But whether William and Thomas, would die, was not contingent: die they certainly would at some time or other : the testator must then have meant, if they should die on or before a certain time, or under some peculiar circumstances. He has not mentioned in terms what those circumstances are, under which, *32 if William and Thomas died, their estates should cease; but we can be át no loss to ascertain his meaning from what he has plainly expressed. The devises to William and Thomas, are made to them and to their heirs and assigns. He intended then, to give each of them an estate of inheritance; an estate which their heirs respectively might enjoy; which they never could do if the estates were to cease upon the death of the devisees. What else then could the testator have meant consistently with such intention, but to limit the estates given to William and Thomas, upon the event of their dying under age, and without issue. And if such was his meaning, then the event has not happened, and of course the property devised to Thomas never vested in his sister Ann, the lessor of the plaintiff. This case is stronger in favor of the issue, than several of those in which the words “ without issue,” have been supplied by construction.
In Kentish v. Newman, 1 Peere Williams, 234, by the terms of the marriage articles, the two hundred pounds in question, was to be to the sole use of the wife, if living; “ but if she should die, before her husband,” then the money was to go to her brother and sister. She did die before her husband, but left a daughter ; and whether the brother and sister, or that daughter should have the two hundred pounds, was the question; and the court held that the words, “ if the wifi? should die before her husband,” must be construed to mean, “if she should die before her husband, without issue.” In that case, there was a specific contingency provided for, and the event happened according to the very words of the article: but in the case now before us, (he testator, although he evidently intended a contingency, failed to express one; and we must either supply a contingency consistent with his expressed intention, or defeat that intention altogether. It may be said, the case just cited, was one peculiarly under the control of a court of equity ; but the same rule of construction has been applied to conveyances of legal estates by will. In Spalding v. Spalding, Cro. Car. 185, cited in 1 Pr. Wms. 235 and Id. 427, lands were devised to A. the testator’s eldest son, and the heirs of his body; and if he died, leaving his mother the tenant for life, then to the testator’s second son. A. died in the lifetime of his mother, but leaving issue; and it was held by all the court, that the will must be construed to mean if A. died in *33 the life-time of his mother, and without issue. The case of Strong v. Cummin, 2 Burr. 767, is directly in point. The testator gave the premises to his son John, and to his heirs, and in a subsequent part of his will; he said, that if his son John should die, theii the premises devised to him should go to his son William : and it was held, that the contingency upon which the estate was to go over, was the dying of John, under the age of twenty-one years and without issue. These cases do not go any further in supplying words by construction, to effectuate the testator’s intention, than was done in White & al. v. Barber & al. 5 Burr. 2708.
But it has been suggested, that we are not called upon to supply any tiling more than the words “ without issue : ” and then the limitation over will create an estate tail in Thomas. But besides the apparent intention of the testator, to give Thomas an estate in fee, by the words heirs and assigns, annexed to the gift, in the first instance, there are several things on the face of the will, which show that the testator could not have intended an estate tail, .¡first, upon the death of William or Thomas, the estate was to go to the “ remainder ” meaning the survivor. Sow by the word “ survivor,” it is manifest that the testator contemplated a person who should be in being, at the time of the death of the devisee that should first die. He could not have supposed that either of the brothers, would survive an indefinite failure of issue of the other; au event that might not happen in one hundred years or more. Again, if William and Thomas both died,, their estates were to go to the testator’s after born children, if any. This too, shows, that he contemplated the possibility of their dying, in the life-time of his after born children ; for we cannot suppose that he meant to limit the devise to his after born children upon an indefinite failure of issue. And again, if the testator had no after born children, then upon the death of William and Thomas, the property was to be sold, and the proceeds divided among his “ surviving children.” This again shows, that the testator contemplated that William and Thomas might both die, in the lifetime of some of his children; for we cannot suppose he meant that the property should be sold and divided among his surviving children, after an indefinite failure of issue of his two sons. Upon the whole, then, I am of opinion that *34 Thomas, took an estate in fee simple in the moiety devised to his mother for life, subject to be defeated upon his dying under age,- and without issue. If I am correct in this, it follows, that Ann Nelson, the wife of the lessor of the plaintiff, has no title to that moiety of the premises, which was devised to her mother, Ann Butcher, for life. Whether she has any interest in the other moiety which was devised to her grandmother Nutt, for life, cannot be determined from the case before us. That moiety passed to the grandmother in fee, by the residuary devise to her, of all the lands in Nottingham, not otherwise disposed of. If Ann Butcher, the mother of Ann Nelson, survived her mother, Mrs. Nutt; then Ann Nelson can have no title to any part of the other moiety; for as was stated at the bar, Ann Butcher joined Thomas Butcher in the mortgage, under which the defendant claims. If however, Mrs. Nutt survived her daughter Ann Butcher, and then died, Ann Nelson may, by inheritance from her grandmother Nutt, or by her will, be entitled to the other moiety or some part of it. But as it does not appear from the case before us, that she has title to any part of the premises in question; judgment must be rendered for the defendant.
Dayton, J.
Had some doubts on the point whether the devise over to Thomas, was of the whole, or only of the half of the house and lot in question. On other matters he fully concurred.
Fond, J.
The parties to this ejectment, have argued a case stated for the opinion of the court on William Nutt’s will duly executed to pass real estate, who being seized in fee, devised as follows:
“ I give unto my beloved wife, the one half the house I now live in, during her natural life. Item, it is my will that my wife shall have the profits of all my lands and tenements in the township of Nottingham, until the legatees arrive at age to enjoy them, excepting the lands I leave William Butcher, and that, she is to have her natural life-time. Item, I give to Thomas Butcher a lot of land where the shop now stands, to be half an acre, to him, his heirs and assigns forever. Item, I give and bequeath unto my daughter Ann Butcher, one half part of the house and lot I now live in (her mother having the other part) during her *35 ¡natural life; then, after her decease, to bequeath to her son Thomas Butcher, to his heirs and assigns forever; then, after her mother’s decease, Ann Butcher to have the whole of it during her natural life. Item, I give and bequeath unto my grandson William Butcher, a certain parcel of land, lying in the township of Nottingham, for one hundred acres, to him, his heirs and assigns forever, when he arrives at the age of twenty-one years. And further it is my will, that if William or Thomas should die, or either of them, the remainder to enjoy the other’s property, and if both should die and she (their mother Ann Butcher,) have any more children, then they shall enjoy it; and if not, then to be sold and equally divided among my surviving children.”
The testator died leaving his daughter Ann Butcher, and his two grandsons, William Butcher and Thomas Butcher, him surviving. After the death of the testator, his daughter A nn Butcher had a daughter named Ann, who was born in the year 1808, and who married William Nelson ; said William Nelson and Ann his wife, áre the lessors of the plaintiff. Thomas Butcher and William Butcher, both died in the lifetime of their mother Ann Butcher, leaving issue, and leaving their sister A nn Nelson, them surviving. William Butcher died before his brother Thomas, whose right to the property devised to him under this will, was levied upon by virtue of an execution against him, and sold by the sheriff of the county of Burlington, and the defendant John R. Combs, became the purchaser.
If the court shall be of opinion that the lessors of the plaintiff are entitled to recover the premises in question, then judgment is to be rendered for the plaintiff; if not, then judgment to be rendered for the defendant.
After a devise of half the house to Ann Butcher during her life, the testator says: “ then, after her decease, to bequeath to Thomas,” meaning evidently, to remain to him. And in another place : “ if William or Thomas should die, or either of them, the remainder, to enjoy the other’s property;” the remainder, evidently meaning, the survivor. These explanations seem to be self-evident.
Here is a devise of one tract to Thomas, and his heirs; and another to William, and his heirs-; and if one of them die, the survivor to enjoy the other’s property; and if both of them die, *36 the whole is devised to their mother’s after born children, if she have any; and as she afterward had a child born named Ann ; the question is upon what contingency Ann was to "take these two estates. Even if she should be born, it is not pretended that she was to take them absolutely; but on some contingent event. For that the testator had in his mind some contingency, upon which the estates of the two brothers were to go over to after born issue, seems to be not only admitted, but to be inferable, from all the arrangements being made with an “if” which invariably imports a condition, or contingency; and “if” being expressed or understood, no less than six times in this short sentence, the whole structure of it may be said to stand upon ifs, and contingencies.
Then in case of Ann being born, the great question is, upon what contingency she was to take the estate. No title can be made to an estate upon condition or contingency, without showing the contingency and that it has actually come to pass; hence Ann must show both these particulars or her title will fail. Now the contingency in this case, is either not expressed and must be collected from the intent of the testator; or if expressed at all, must be in the words: “if both” (William and Thomas) “should die.” It is not, when- they shall die, for the time when, being unforeseen, would be contingent; but it is: “ if they should die.” Now it is appointed to all men to die; death is the most certain event in nature; it is not a contingent matter; and as these words cannot, by any possibility, import a contingency, the unavoidable consequence is, that none is expressed; but must be gathered from the whole scope of the, will. There is but one way to escape from this conclusion, and that is by considering the words, “ if both should die,” not as a contingency, but as a condition, on the happening whereof the estates were to vest in Ann. But by construing them into'a condition, the testator will be made to give estates to Thomas and William only for their lifetimes and the life of the survivor, and thereby extinguish every spark of the testator’s benevolence for the issue of these grandsons, though he has manifested his benevolence for them in the clearest manner, by devising these estates, not to Thomas and William alone, but to “ their heirs and assigns forever.” The nearest heirs to every man, are his children ; and this provision expressly made *37 for their children, would be annihilated by construing the words into a condition, and thereby restricting Thomas and William to estates for life only. Therefore they neither make a condition, nor import the least semblance of a contingency ; which contingency remains to be sought for in the intent of the testator, to be collected from the provisions and scope of the will.
In this will, the testator provides for all his family, of whom Ann Butcher his daughter, and her two sons William and Thomas constituted one branch. He first provides for her, a life estate which would cease at her death, and avail nothing to her children, for each of whom, he makes, therefore, an independent provision. To William, he gives a tract of land, not merely for him, but for his family also if he should come of age and have one, by giving it to him, and also to his heirs and assigns forever. To Thomas, he gives another tract not merely for himself, but also for his family if he should come of age and have one, by giving it to him, and also to his heirs and assigns forever. But they being both young, and liable to die under age, and without lawful issue, he meant*to provide for such an event, by adding, “ that if either of them die, the survivor shall enjoy the other’s property,” evidently meaning, die under age, and without lawful issue. If they should leave any issue, he had before given it to such issue by the name of heirs ; he never intended to take it from such issue, by giving both shares to the survivor, thus making him a double portion, and leaving the bereaved children of the deceased son, destitute of the very support he had so carefully provided for them by the name of heirs. It is contrary to the justice of all his other provisions, to suppose it. Being unlearned, he left out the words, under age and without lawful issue, by mistake; yet his intent is almost as plain as those words could make it. And the next clause render this intent, if possible, plainer still: it is that, “ if both should die,” then the estates of both should go to any children born afterward of their mother. Now if each son should be surrounded at his death, by a family of children, he never intended to leave both of their families destitute, by taking away the support he had provided for them by the name of heirs, in order to give it to unknown children, whom he never saw, and who might never be bom. . And if none were ever born, worse still, to be sold, and withdrawn from this branch, while *38 the issue of both sons were living, and for whom it was expressly provided. The testator’s plain meaning is, that if one of the sons die under age, without lawful issue, it shall go to the surviving son, as the only member left of this family; and if he also die under age, without lawful issue, and Ann Butcher have any other children, they shall have it; so as never to go out of her family, while a descendant from her is living; but if her whole branch become extinct, by each one dying under age and leaving no issue, then it goes over among the other branches of the testator’s family, by means of a sale. It is a devise to each son in fee, liable, upon one of them dying under age, and without lawful issue, to be defeated, and his portion to go to the survivor; (consequently not in tail;) and liable, if the survivor die under age and without lawful issue, for both shares to be defeated, and go to Ann the lessor; but by her brothers’ both dying of age, and leaving issue, these contingencies can never now happen, and therefore she is not entitled to recover under this will.
When a testator has omitted words obviously necessary to'express his meaning, and the intention can be plainly gathered from the contents of the will, courts have considered it their duty to supply such omitted words, rather than do violence to his plain intention, by pertinaciously adhering to his words, without regard to the sense of the instrument. Thus the word or has been substituted for and, and the word and for or, in order to effectuate the testator’s manifest intention. Nevison v. Taylor, 3 Halst. 43; 2 South. 421; Cro. Eliz. 525; 2 Atk. 645; 1 Peere Wil. 434; 3 Ter. Rep. 473.
And the instances of supplying words ignorantly omitted, when necessary to effectuate a plain intent, will show the law on this point to be fully settled, and without having produced more than a shadow of doubt. If will suffice to state one or two cases and refer to others.
In Spalding v. Spalding, Cro. Car. 185; 1 Peere Wil. 235, 427, lands were devised to the testator’s eldest son and the heirs of his body ; and if he died, leaving his mother, then to the testator’s second son. The eldest son died, leaving his mother, leaving issue. The second son claimed the land as being devised to him in express words, if the eldest son die leaving his mother; but the court resolved that the testator’s plain intent was, if the eldest *39 son died without issue leaving his mother; and that they would supply the words without issue, for it could not he intended that the testator would prefer the second son, before the eldest sou’s issue, as the heirs of the body were expressly mentioned in the previous clause.
The case of Strong v. Cummin, 2 Bur. 767, cannot be distinguished in principle, from the one before us. The testator devised his hinds in Woodhay, to his eldest son Robert, and his heirs ; and his Picked lands to his second son John, and his heirs; “ and in ease that his son Robert or John die, then his third son William to have Picked lands, to him and his heirs.” Lord Mansfield said, it was not difficult to discover what the testator intended. He certainly did not mean to give his two eldest sons, estates during only their lives; and it necessarily followed that he meant a dying on some contingency which he had not expressed. One contingency plainly is, if they die without issue. Neither did he mean to tie down his two eldest sons from disposing of their respective estates, after the age of twenty-one years. If either of the two eldest sons die under age and without lawful issue, the other, being his heir, would take the portion of both, and being thus amply provided for, his third son William, was then to have Picked lands to him and his heirs. Thus the court supplied two plainly omitted contingencies after the words “ if they die,” by adding, under age and without lawful issue, in order to effectuate the plain intent of the testator. The court acted on the same principle in Kentish v. Newman, 1 Peere Wms. 234; and in Hewet v. Ireland, 1 Peere Wms. 426, and 1 Hall’s Sup. Co. Rep. 1. I am of opinion therefore, that William and Thomas Butcher, having left issue at their death, neither of the estates devised to them, ever vested in Ann their after born sister, and that judgment must be rendered for the defendant.
Wihte, J.
William Nutt being seized in fee of the premises in question, by his will dated the 29fch of Dec. A. I). 1797, duly executed to pass real estate, devised to his wife, the one half part of the house in which he then lived, with half the lot, garden, &c., during her natural life; and to her he gave the profits of all his lands and tenements in the township of Nottingham, until the legatees should arrive at age to enjoy them, except the lands he *40 gave to William Butcher, and that, she was to have during her natural life.
Then in his said will he says, “ I give and bequeath to Thomas Butcher, a lot of land whereon the shop now stands, to him, his heirs and assigns forever. Then to his daughter Ann Butcher, he gives and bequeaths one half part of the house and lot where he lived, her mother having the other part during her natural life. Then, after her decease to bequeath to her son Thomas Butcher, to him, his heirs and assigns forever: and after her mother’s death, Ann Butcher to have the whole of it during her natural life.”
Then after several devises to others of his children, of lands, situate some in, and others not in the township of Nottingham, he by his will gives and bequeaths unto his wife, all the remainder part of his lands in the township of Nottingham, whioh he has not willed away, to hold to her, her heirs and assigns forever ; and he charges the estate devised to the wife, with the payments of his just debts. And in the will is this clause: “ Item, it is my will that if my wife should die before her daughter Ann Butcher, that then out of the estate which I have left to William Butcher, he shall pay to his mother yearly, ten pounds during her natural life; and further it is my will, that if William or Thomas should die, or either of them, the remainder' to enjoy the other’s property, and if both should die, and Ann shall have any more children, then they shall enjoy it; and if not, then to be sold and equally divided among my surviving children. And further, if any of the legatees should die before they arrive at age, their estate shall be equally divided amongst the children of the same family.
When the testator died, Ann his daughter and her two sons, William and Thomas were living; and after his death, Ann had a child, a daughter, whom she called Ann. This daughter married William Nelson, and they are the lessors of the plaintiff, in this suit.
Thomas and William Butcher both married and have lawful issue, and died in the lifetime of Ann their mother, leaving Ann the sister, them surviving.
Thomas survived William his brother. The right of Thomas in the premises in question was sold by the sheriff, and the de *41 fendant, John R. Combs, became the purchaser and is now the defendant in this suit.
The question brought up for the opinion of the court, by the state of the case on which the argument of counsel has been heard, is as to what estate or right Thomas the grandson, took by the will of his grandfather.
I think it very evident from the phraseology of this will, that it is the will of a man not learned in law; drawn by one not skilled in legal terms, and not very choice in the application of the most apt words to convey the meaning and intent of the testator ; and for want of proper terms, or the proper arrangement of terms, has created some obscurity, as to what was the true meaning of the testator. Oro. Car. 185.
It is the duty of the court to sift out, or to use the expression of some learned judge, spell out the true intent and meaning of the testator, and to carry out that intent, where it can be done consistent with the rules of law. 1 Atk. 585.
And I think the cases arc numerous which go to show that the court have, and it is their duty to supply necessary words which by the want of knowledge of the testator, or the want of skill in the scribe, have been omitted, wherever from the whole will it appears that the intent of the testator will be entirely frustrated, if such words were not supplied.
It is the intention of the testator which is to direct the construction of a will, where that intent ip not contrary to law, 1 Atk. 585.
In the devise of the house and lot to Thomas, it is to him, his heirs and assigns forever; and as to one half of the lot bequeathed to Ann for life, in which the testator is made to say, “ then after her decease, to bequeath to her son Thomas Botcher, to him, his heirs and assigns forever.” It could never have been the expectation or intention of the testator, that Ann should devise what he had not given to her. She had only a life estate by the will; and it is evident he intended, after her death, that Thomas should have it in fee, and unless some other expressions than those used by the testator, are supplied, this estate will go from the family of Thomas, perhaps to be sold, and the proceeds divided amongst other members of his family, for whom, ample provision had been made by the will of the testator. If he did *42 .not mean that Ann should bequeath, and he did intend that Thomas should take, is it going.too far to supply the word bequeath, with another word, belong, and read the clause thus: after the death of Ann, to belong to her son Thomas, to him, his heirs and assigns forever. Some word to carry out the intent of the testator, and to pass the estate over to Thomas, after her death, I feel authorized by the numerous cases on the books, to supply, and I think the testator meant that it should belong to Thomas and his heirs and assigns forever.
In the lot of land on which the shop stood, and in the one moiety of the house and lot devised to her daughter Ann for life, and then to belong to Thomas, his heirs and assigns forever, I think, Thomas had an estate in fee simple. The last, subject to incumbrance of the mother’s life estate therein; and both the estates in fee, to be defeated on his death without issue. It could not have been the intention of the testator, who has provided for every branch of his family, and with an eye to the descendants of his sons and daughters, to have put the estate he gave to Thomas, on such a footing, that in case of his living and having lawful issue, that the whole property should go over to the daughter of Ann, on his death, which he knew was a certain event. We must look at the whole will to discover the intent of the testator. Now he has charged the estate devised to William, with the payment of money to his mother Ann, the sum of ten pounds a year, during her natural life; and the devise to William, is in the like shape as the devise to Thomas. In case of his death, leaving Thomas living, it is to go to Thomas; and in case of the death of both William and Thomas, to go to the after born children of Ann. Now I feel authorized by the cases in the books, to supply the words “ without issue,” and read this clause thus: That if my sons William or Thomas or either of them, should die without issue, the survivor or one remaining, to enjoy his share of the estate, and if both should die without issue, and Ann have any more children, then they shall enjoy the estate: if not, the same shall be sold and equally divided amongst my surviving children.
I am not prepared to say that in the case of the death of William, leaving issue, that the estate devised to him, charged with the payment of money to his mother, shall go over to Thomas, *43 who survived ; if this cannot be done, can the court give a different construction to the same clause in the will, in case Thomas should die first, having issue, and leaving William, him surviving j*
I have come to the conclusion, that, Thomas in the shop lot, and in the half of the house and lot given to his mother for life, took an estate in fee, subject to be defeated on his death without issue, and on that event only, it could go over to the after born daughter of Ann, and that the plaintiff is not entitled under the will, to recover any share of this property which lies in the township of Nottingham.
Wh ther the other half of the house and lot which was devised to the widow Nutt for life, was or was not given by this will to Thomas Butcher ; can make no difference in this case as to the right of the plaintiff to recover in this action. If Thomas had a right, it was sold by the sheriff and is now in the defendant, and if it was not devised to Thomas, the widow Nutt took under the will, all the real estate in Nottingham, which was not before willed away; and the case does not show that the lessor of the plaintiff became entitled to any part of the estate which was devised to the widow. If Mrs. Ann Nelson were defendant in this suit, heir possession would not be disturbed by any claim of the defendant under the purchase of Thomas Butcher’s right; but she and her husband are the lessors of the plaintiff; and it is incumbent upon them to make out a olear case of title, to enable them to recover against the defendant. We cannot say that the widow died seized of the premises, and that they descended to Ann Butcher the mother of Ann Nelson ; or that they descended to Ann, one of the lessors of the plaintiff.
Let judgment be entered for the defendant.
Nevitjs, J.
The plaintiff claims title to the premises in question, under the. last will of William Nutt, late of Burlington, dated the 29th December, 1797 : and the defendant claims the same lands, by virtue of a purchase at a sheriff’s sale, under an execution against Thomas Butcher who claimed them under the same will. The question therefore, touching the right of these parties, arises from the construction of that will. The testator by the first clause in his will affecting the premises in *44 question, “gives to his wife, the one half of the house he then lived in, she taking her choice, & likewise half the lot, half the garden and half the stables, during her natural life.” In a subsequent clause, he gives to his daughter Ann Butcher, the other half of hie house and lot, during her life, “ and after her decease, to bequeath to her son Thomas Butcher, his heirs and assigns. Then after her mother’s decease, Ann Butcher to have the whole of it during her life.” After certain other devises of land to his other children, and in the latter part of his will, the testator further directs as follows : “ It is my will that if my wife should die before her daughter Ann Butcher, that then out of the estate that I have left to William Butcher, he shall pay to his mother, yearly, ten pounds, during her natural life; and further it is my will, that if William or Thomas Butcher should die or either of them, the remainder to enjoy the other’s property, and if both should die and she have any more children, then they shall enjoy it; and if not, then to be sold and equally divided among my surviving children.”
The testator died leaving his daughter Ann Butcher and his grandsons, William and Thomas Butcher surviving; and after his death, his daughter Ann had a daughter named Ann, who intermarried with William Nelson, who are the lessors >of the plaintiff. Thomas and William having attained full age, died in the life-time of their mother, leaving issue and leaving their sister Ann Nelson surviving. William Butcher died before Thomas, and Thomas’s right to this property under this will, was levied upon by virtue of an execution against him and sold by the sheriff of Burlington, and the defendant Combs, became the purchaser. Upon this state of facts, it is submitted to this court to determine whether the plaintiffs are entitled to recover.
In the construction of this will, the testator’s intention collected from the whole will, is to be the governing principle; and although drawn with great want of precision and skill, I apprehend the intention can be pretty clearly ascertained. By the first recited clause, he gives to his wife Jane, the one half of his house and lot, during her natural life; by the second, he gives to his daughter Ann, the other half during her life; and at her death “ to bequeath” to her son Thomas, his heirs and assigns forever. And after his wife’s death, his daughter to have the *45 whole during her life. What estate did Thomas take under these clauses ? and in what lands. By the awkward use of the words “ to bequeath,” the testator did not intend that his daughter Ann should bequeath to Thomas, but he meant to bequeath to Thomas and the word “ to,” was probably substituted for “ I” by the carelessness or unskillfulness of the writer. The devise therefore is to be esteemed as made by the testator directly to Thomas, to be enjoyed after his mother’s death. What lands are included in this devise ? The whole or the half of the house and lot ? By the strict terms of the will, the half only would pass to Thomas subject to his mother’s life estate. Yet it is clear that he intended to devise the whole to him, subject to the life estate in bis wife Jane, in the one half; and of his daughter’s life estate in the whole, after his wife’s death. And such would be the only construction, if the two clauses were transposed. This the court have a right to do, to carry out the testator’s intent when fully ascertained.
Thomas then took a fee simple estate in this house and lot, subject only to these life estates under the first and second clauses of this will, above recited. It remains therefore to enquire, whether that estate was limited or altered by the last clause above recited. He then says that if his grandsons William or Thomas, should die or either of them, the “ remainder ” to enjoy the other’s property; meaning unquestionably the survivor to take under this clause, and using the word u remainder,” for survivor. But he did not mean that the mere fact of one surviving the other, would entitle him to take the lauds so devised to the deceased. Had such been his intention, be would have given a life estate only to these grandsons. Yet he intended to give more to Thomas, for he uses in the previous clause, the words heirs and assigns. The right of the survivor therefore, to take, did not depend upon the mere death of one them, for that was an event that would certainly take place, but upon some contingency which in the testator’s opinion, would cause a failure of the former devise to Thomas. And if we take the word heirs, used in the former clause, as children or issue, as it probably was, then the contingency by which the survivor’s right would be affected, would be the death of one of them without issue. And the same reasoning would apply to the last clause, to wit, if both *46 should die, and their mother have other children, &c. The language used clearly indicates that the testator had in mind, a contingency, when he used the words, “if both should die.” Now it was certain that both would die. In that, then, there was no contingency. No other construction therefore, can be put upon this clause, consistently with the testator’s intention as gathered from the whole scope of the will, than that the estate of Thomas and William under this will, was not to be defeated except by their death without issue. As this contingency therefore d-id not happen, Thomas is to be esteemed as taking an estate in fee simple in the premises, which on his death, descended to his heirs. This estate in Thomas, is in exclusion of any estate in the same lands, in the lessors of the plaintiff who are not entitled under this will to recover.

Judgment for defendant.

Cited in Den v. Allaire, Spencer 14; Den v. Young, 4 Zab. 782-784; Fairchild v. Crane, 2 Beas. 108.